IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| RAYMOND EDWARD CHESTNUT, | ) | |
|---|---|---|
| Petitioner, | ) | Civil Action No. 7:19-cv-00430 |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | By: Elizabeth K. Dillon |
| D. LUE, Acting Warden, | ) | United States District Judge |
| Respondent. | ) | |

**MEMORANDUM OPINION**

Raymond Edward Chestnut, a federal inmate proceeding *pro se*, filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, alleging that he was denied due process during prison disciplinary proceedings arising from Incident Report ("IR") 3222788.[1] For the reasons discussed below, the court concludes that respondent is entitled to summary judgment as to Chestnut's claims and that Chestnut's petition must be denied.

I. BACKGROUND

**A. Procedural History**

Chestnut is a prolific filer of challenges to Bureau of Prisons ("BOP") disciplinary hearings, having filed over 430 Disciplinary Hearing Officer ("DHO") Hearing Appeals since his incarceration in 2008. According to respondent, Chestnut also has filed almost one hundred § 2241 petitions in federal courts since 2013. That includes a number of § 2241 petitions in this court challenging various of his disciplinary convictions, primarily on due process grounds.

---

[1] In several places in respondent's second motion to dismiss (which addresses a number of Chestnut's cases collectively), respondent states that this case (7:19-cv-430) relates to IR 3203322. (*E.g.*, Mem. Supp. Mot. Summ. J. 2, 3, 18, Dkt. No. 15.) That incident report number, however, does not appear in Chestnut's petitions in this matter. Rather, his petitions and amended petitions, as well as other documents in the case, repeatedly state that IR 3222788 is the disciplinary proceeding being challenged in this case. IR 3203322 was referenced in Chestnut's original petition in Case No. 7:19-cv-455, but his last petition in that case referenced only a single IR proceeding and did not include IR 3203322. Thus, it does not appear that Chestnut has any case challenging IR 3203322.

Before reaching the merits of his petition, the court addresses Chestnut's motions to amend or supplement his petition; all remaining motions either will be denied or will be denied as moot.[2] Respondent opposes all of the motions to amend or supplement. Respondent contends that Chestnut has exhibited bad faith in his attempts to amend and that he is attempting to add new claims based on newly created or altered documents that were not part of the original DHO record.

Although ultimately the court determines that some of respondent's arguments in opposition to Chestnut's motion to amend have merit, the court nonetheless will grant Chestnut's most recent motion to amend, and will consider the claims he raises therein on their merits. The court does so both for judicial economy's sake and because, in light of the denial of Chestnut's petition, allowing amendment does not prejudice respondent. Accordingly, the court will grant Chestnut's third motion to amend (Dkt. No. 33) and will treat the third amended petition (Dkt. No. 33-1) as the operative petition.[3] Chestnut's other motions to amend and to supplement (Dkt. Nos. 18, 24) will be denied as moot. Additionally, the court will consider respondent's arguments in his opposition briefs to the motions to amend (Dkt. Nos. 21, 35) as supporting the previously-filed motion for summary judgment (Dkt. No. 14).

---

[2] Motions denied as moot are motions related to Chestnut's request that the court expedite these proceedings (Dkt. Nos. 3, 12, 28, 36, and 39); his motion for preliminary injunction (Dkt. Nos. 19, 25); and his motion for judgment (Dkt. No. 51), which argues that he is entitled to relief on his petition. To the extent any of Chestnut's motions for sanctions (Dkt. Nos. 47, 50, 55) would survive the dismissal of the case, the court finds no basis for imposing sanctions on respondent or his counsel. Thus, those motions will be denied

[3] The court previously directed the Clerk to docket a petition from a separate case challenging the same IR as a "supplemental petition" in this case. (Dkt. Nos. 30, 31.) The claims in the supplemental petition, although lacking in detail, appear to be entirely duplicative of claims in Chestnut's third amended petition.

**B. Chestnut's Claims and Respondent's Motion for Summary Judgment**

In his third amended petition, Chestnut asserts three claims, but the second of those has two-sub-parts. First, he contends that he was not provided *written* notice of the charged misconduct before the DHO hearing, only oral notice of the charges.

His second claim is that the hearing officer was biased against him, rather than neutral and detached. That claim of bias is predicated on two other—and really separate—allegations. Specifically, Chestnut first claims that the DHO failed to allow him an opportunity to present documentary evidence. His third amended petition then contains a written statement that he says he wanted to present, but was not permitted to submit. In that "written statement," he states that he did not receive written notice of the charges, that the incident was fabricated, and that there are witnesses that can testify on his behalf, although he does not know their names.

In the second part of his second claim, Chestnut alleges that the DHO was biased when he did not call, consider, and acknowledge Chestnut's alleged pre-hearing request for witnesses Darrian Summers and Officer Long to testify.

Third and lastly, his amended petition claims that there was inadequate evidence to sustain his conviction.

Respondent has moved to dismiss or, in the alternative, for summary judgment, and Chestnut has responded. One of the initial defenses by respondent was that Chestnut had failed to properly exhaust his claims before filing suit. In recent supplemental briefing requested by the court, however, respondent acknowledges that Chestnut has since exhausted his remedies as to this disciplinary proceeding. (Dkt. No. 48 at 1.) Rather than analyzing whether Chestnut's failure to exhaust prior to filing is a ground for dismissal, this court will treat his claims in this

case as exhausted for purposes of this opinion. Instead, the court concludes that Chestnut is not entitled to relief because he can not show a violation of his due process rights.

**C. Factual Background as to IR 3222788[4]**

The events giving rise to IR 3222788 occurred at about 8:22 p.m. on February 10, 2019, while Chestnut was incarcerated at FCI Petersburg. As described in the Incident Report, Correctional Officer J. Long was assisting in escorting Chestnut from the law library to cell 102. Chestnut apparently believed he would be getting a cell mate, and stated, "I'm going to get y'all! Get that guy out of my f**king cell! I will show you why! When I say something, you do it." Chestnut submitted to hand restraints but continued to complain about getting a cell mate. During the escort, Chestnut stated "F**k y'all," and attempted to pull away from Long and the two other officers escorting him. He then "dead weighted" his body weight, went limp in a sitting motion with his legs out in front of him, and shouted "I'll get y'all!" He continued to resist after he was placed on the floor and ordered to stop resisting, and he spit and continued to shout, "I am going to get you!"

The disciplinary hearing occurred on March 22, 2019, at FCC Butner, where Chestnut was then housed. The relevant details of the hearing are discussed in context below. The DHO ruled that there was insufficient evidence to support the charge of assault, code 224, but did find that Chestnut's conduct qualified as threatening bodily harm, code 203. The DHO also found that Chestnut committed the offense of refusing orders, code 307. The DHO dismissed the charge of insolence, code 312.

The only offense that affected Chestnut's good conduct time was the offense of

---

[4] The DHO report for IR 3222788 and related documents are Attachment G to the affidavit of Tiffanie Little. (Dkt. No. 15-8.) The two-page Incident Report itself was not included as part of that attachment but is docketed as an attachment to a recently filed declaration. (Dkt. No. 48-2, at 6–7.)

4

threatening bodily harm. Specifically, for that offense, the DHO sanctioned Chestnut with: (1) disallowance of 27 days of good conduct time; (2) forfeiture of 27 days of non-vested good conduct time; and (3) 15 days of disciplinary segregation. That is the only offense at issue in the petition.

## II. DISCUSSION

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty or property without due process of law." U.S. Constitutional Amendment XIV § 1. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). It is well established that the loss of earned good time credits, which was part of Chestnut's penalty for the offense of threatening bodily harm, is an interest sufficient to invoke the protections of due process. *Wolff v. McDonnell*, 418 U.S. 539 (1974). But defendants contend that Chestnut was not denied due process during his hearing or the appeal process. (Mem. Supp. Mot. Summ. J. 22–24, Dkt. No. 15.) The court agrees.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. Instead, the inmate must receive: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563–67)).

Chestnut's final claim, which challenges the sufficiency of the evidence against him, fails

5

so long as there is "some evidence" supporting the DHO's conclusions. *Hill*, 472 U.S. at 454, 456 (holding that due process was satisfied if "the findings of the prison disciplinary board are supported by some evidence in the record" and explaining that "[t]he fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators [in disciplinary proceedings] that have some basis in fact").

The Fourth Circuit has recently clarified that a different standard applies, however, to procedural due process challenges in prison disciplinary hearings, such as Chestnut's claims here that the DHO did not consider his written statement and that he was not permitted to call his two allegedly requested witnesses. *Lennear v. Wilson*, 937 F.3d 257, 276–77 (4th Cir. 2019) (explaining that the "some evidence" standard of *Hill* is inapplicable when a court is considering "whether prison officials' failure to disclose or consider testimonial or documentary [evidence] was harmless"). Specifically, the court should instead determine whether any excluded evidence could have "aided" the inmate's defense. *Id.*

Applying those standards here, and considering all of the record evidence, the court concludes that there is no evidence from which a reasonable factfinder could conclude that any of the challenges raised by Chestnut constituted a due process violation. In particular, many of his assertions are flatly contradicted by the record of the disciplinary hearing and other documents, and his after-the-fact statements to the contrary do not suffice to create a genuine dispute of material fact so as to survive summary judgment.

**A. Failure to Give Written Notice of the Charged Misconduct**

Chestnut's claim that he did not receive written notice of the charged conduct was not raised by him until his September 23, 2019 motion to amend, and there is nothing in the record to suggest that he raised it at or before the hearing. Moreover, the DHO Report of the hearing specifically stated that "[a]dvanced written notice of charge (copy of Incident Report) was given

6

to Chestnut" on March 18, 2019 at 2:15 pm by T. Schneider. (Dkt. No. 15-8, at 1.) Elsewhere in the DHO report, it states that "[t]he DHO then confirmed the inmate had received a copy of the re-written incident report." (*Id.* at 2.) Moreover, the file contains a document dated March 19, 2019, and signed by Chestnut titled "Notice of Disciplinary Hearing" that lists the charged offenses. (*Id.* at 6.) In light of these facts, Chestnut's late-raised allegation that he did not receive written notice is insufficient to survive summary judgment.

**B. Biased Decisionmaker**

An inmate facing disciplinary charges has the right to an impartial decisionmaker. *Wolff*, 418 U.S. at 571. Prison hearing officers are not held to the same standard of neutrality as judges in criminal proceedings, however. *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996). In order for this court to find the DHO less than impartial, "there must be some substantial countervailing reason to conclude that [he was] actually biased with respect to factual issues being adjudicated." *Gwinn v. Awmiller*, 354 F.3d 1211, 1220 (10th Cir. 2004); *see Wolff*, 418 U.S. at 592 (Marshall, J., concurring) ("Due process is satisfied as long as no member of the disciplinary board has been involved in the investigation or prosecution of the particular case, or had any other form of personal involvement in the case.").

Chestnut does not point to anything in particular for support of his claim that the DHO was biased against him, other than asserting that the DHO improperly excluded evidence and witnesses. As discussed below, however, the DHO did not act improperly and the DHO's decisions therefore do not indicate bias. Without more, the DHO's ultimate decision to believe the officers' testimony and report instead of believing Chestnut does not prove his partiality or bias. *See Brown v. Angelone*, 938 F. Supp. 340, 345 (W.D. Va. 1996). Indeed, judging the credibility of participants is a critical part of a hearing officer's job, and federal courts do not

review the correctness of a disciplinary hearing officer's findings of fact. *Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). Such findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. *Hill*, 472 U.S. at 456. Here, the court easily concludes that there was "some evidence" to support the DHO's credibility finding.

Quite simply, there is no evidence from which a reasonable factfinder could conclude that the DHO was not impartial, Chestnut's vague and conclusory allegation to the contrary notwithstanding.

**C. Failure to allow his "written statement" and failure to allow witnesses**

Chestnut's claim that he was not permitted to call witnesses and his claim that he was not permitted to submit a written statement are intertwined. The court thus discusses them together.

For support of his claim that he was not permitted to call witnesses, Chestnut relies heavily on a document initially filed by respondent and pulled from Chestnut's central file. (Dkt. No. 17-8, at 6.) There are two versions of that document, however. The first version is the one that respondent contends was the document in the DHO file. It looks like this:



8

The second version is the one on which Chestnut relies. That version is internally inconsistent, however, because it has a box checked stating that Chestnut does not wish to have witnesses at the hearing, but then lists two proposed witnesses and the subject of their testimony. The document, as taken from Chestnut's central file, looks like this:

> You will also have the right to call witnesses at the hearing and to present documentary evidence in your behalf; provided, calling your witnesses will not jeopardize institutional safety. Names of witnesses you wish to call should be listed below. Briefly state to what each proposed witness would be able to testify.
>
> I (do) ~~do not~~ wish to have witnesses.
>
> NAME: Darrian Summers  |  Can Testify to: I did not threaten the officers
>
> NAME: Ofc. Long  |  Can Testify to: He didn't feel threatened
>
> NAME:  |  Can Testify to:
>
> The Discipline Hearing Officer will call those witnesses (Staff or Inmate) who are reasonably available, and who are determined by the DHO to have information relevant to the charge(s). Repetitive witnesses and repetitive character references need not be called. Unavailable witnesses may be asked to submit written statements.
>
> DATE: 3-19-19   SIGNATURE: Lay Chestnut
>
> Notice of hearing before DHO given inmate   3/19/19 12:35 Date/Time   by [signature] Staff Printed Name/Signature
>
> This form may be replicated via WP.   Replaces BP-294(52) of JAN 88

This purported request for witnesses is not only internally inconsistent, but it also is inconsistent with the records of the disciplinary hearing and other statements made by Chestnut. Most notably, the DHO's summary of the proceeding indicates that when the DHO sought to confirm that Chestnut was not calling any witnesses, Chestnut stated—for the first time—that he did want to call witnesses, although he could not name or identify any of them. Chestnut's representative also told the DHO that she had met with Chestnut several times regarding the incident and that Chestnut had never asked for her assistance with identifying potential witnesses or indicate that he was requesting witnesses. (Dkt. No. 17-8 at 1–2.)

9

When asked why he had not made his request for witnesses before the hearing, Chestnut initially stated that he had told his staff representative, but when pressed, conceded that he "might not have been clear." In any event, when the DHO asked for the names of witnesses he would like to call, Chestnut said he did not know their names. The report states that although the timing of the request was inappropriate, the DHO would suspend the hearing until witnesses could be identified and located if Chestnut could provide any identifying information about the potential witnesses at all. Chestnut, however was "unable to do so." Thus, the hearing went forward as scheduled.

Critically, *none* of that discussion makes any sense if Chestnut in fact requested two named witnesses ahead of time. There would have been no need to question the staff representative, to ask Chestnut to identify his witnesses, or to offer to postpone the hearing so he could do so.

In light of the internal inconsistencies and other conflicting record evidence, the court noted this document and requested additional briefing as to exhaustion. (Dkt. No. 45 at 1–2.) In their respective supplemental filings, each party accuses the other of tampering with the document.

For his part, respondent provided the sworn declaration of Jervis Steamer, a DHO at FCC Butner, where the hearing was held. Steamer pulled the documents that constituted the original DHO packet for IR 3222788. According to Steamer, those documents were immediately scanned and saved after the DHO hearing but before the documents were placed in Chestnut's central file. (Steamer Decl. ¶ 6, Dkt. No. 48-1.) In the original document from Butner's DHO packet, which were the documents before the DHO, no witness names or subjects were listed. (*Id.*, ¶¶ 4–6.)

Steamer explains that after the original documents are scanned as the DHO packet, the records are then sent to the inmate's unit team, who adds the records to the inmate's central file. Chestnut, like all other inmates, was provided with an opportunity to review his central file and take notes. (Steamer Decl. ¶ 2.) Based on the documents, Steamer avers that the names of potential witnesses and description of their testimony was added at some point when the file was in possession of the unit team and then erroneously became part of the central file. Respondent's counsel argues that it was "likely" Chestnut who made the additions. (Dkt. No. 48 at 4–5.)

Chestnut disputes that he altered the document and disputes that he even reviewed his central file subsequent to the date of the hearing. He also submits documentation that he says supports his claim that he did not review his central file. But for purposes of this summary judgment motion, it matters not whether it was Chestnut who altered the document or someone else, and it matters not whether the document was altered during Chestnut's review of the central file or at some other point. The critical fact—and one that Chestnut has no competent evidence to disprove—is that the original DHO file did not contain a request for witnesses. This is also consistent with the remainder of the DHO file, as the court has already explained above. To reiterate, the course of the discussion regarding witnesses throughout the hearing would make no sense if Chestnut had, in fact, requested named witnesses ahead of time.

For his part, Chestnut accuses respondent, BOP employees, or respondent's counsel of altering the document (presumably by deleting the witness names and testimony subjects) and asks for sanctions as a result. (Dkt. Nos. 54, 55, 56, 57.) But his unsupported allegations of document tampering cannot be credited by the court, particularly when the document without the

listed names (the unaltered version, according to respondent) is consistent with the rest of that same document *and* with all contemporaneous notes of the hearing.

Chestnut also tries to bolster his own tampering theory with a submission attached to his petition as a statement he had purportedly written on March 21, 2019, the date before the hearing. He alleges that he possessed this statement at the time of his hearing and tried to submit it to the DHO, who excluded it. Indeed, the purported exclusion of that document is the basis for his claim that the DHO improperly prohibited evidence. In that document, Chestnut states that "[t]here are witnesses that can testify on my behalf. I don't know their names at this present time, but it was requested and documented on the Notice of Hearing before the DHO form. I believe it was on March 19, 2019. Just review the records and you will see what I am saying." (Dkt. No. 33-2 at 9.)

The court finds Chestnut's purported statement to be patently incredible. First of all, the "written statement" was attached to his second amended § 2241 petition, but it never appeared in his original or first amended § 2241 petition, and no reference to an offered or refused written statement appears anywhere in the record of the hearing. Moreover, the letter's assertion that Chestnut knew the names of his two witnesses on March 19, 2019, when he supposedly wrote them on the form requesting them, but did not know their names two days later, when he wrote the statement, makes no sense. Given that Chestnut's current statement appears to be made up whole-cloth (and contradictory to substantial other record evidence), the court concludes that it is insufficient to create a "genuine" dispute with respondent's summary judgment evidence, all of which makes plain that his supposed March 21, 2019 letter was not prepared before the hearing or submitted at the hearing, but it was instead prepared at some point afterward.

To conclude otherwise, a factfinder would have to believe that multiple people within the BOP, including the DHO, purposefully falsified records in order to omit any reference to this document and any reference to Chestnut identifying and asking for witnesses ahead of time. Nothing in the record supports such a finding except Chestnut's self-serving testimony.

Although credibility determinations are not made at the summary judgment stage, parties' differing beliefs about a fact when the plaintiff solely relies on his own self-serving testimony cannot create a genuine dispute of material fact. *See Harris v. Home Sales Co.*, 499 F. App'x 285, 294 (4th Cir. 2012); *see also Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005) (affirming the district court's granting of summary judgment in defendant's favor when "nothing in the record [supported] plaintiff's allegations other than plaintiff's own contradictory ... testimony"); *see also DiQuollo v. Prosperity Mortg. Corp.*, 984 F. Supp. 2d 563, 570 (E.D. Va. 2013) ("The law is well established that uncorroborated, self-serving testimony of a plaintiff is not sufficient to create a material dispute of fact sufficient to defeat summary judgment."). The key question is "whether the non-movant has produced enough evidence to demonstrate that a 'dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Lovett v. Cracker Barrel Old Country Store, Inc.*, 700 F. App'x 209, 212 (4th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248).

Here, Chestnut's self-serving testimony, which is contradicted by significant other competent evidence in the case, does not create a *genuine* dispute. No reasonable fact-finder, given all the evidence, could believe that either the form with the listed witnesses or his purported March 21, 2019 statement, was presented to the DHO prior to or at the hearing. And

13

because neither was submitted at that time, the DHO did not exclude them nor violate Chestnut's due process rights as to the supposed witnesses or the statement.[5]

**D. Sufficiency of the Evidence**

Chestnut's final claim is that there was insufficient evidence to find him guilty of the offense of threatening bodily harm. As to that claim, the court has already explained that the record need only contain "some evidence" against him. Specifically, the *Hill* Court held that due process was satisfied if "the findings of the prison disciplinary board are supported by some evidence in the record." *Id.* In other words, "[t]he fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators [in disciplinary proceedings] that have some basis in fact." *Id.* at 456. Determining "whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* at 455.

As the DHO explained as to how he reached his decision, it was undisputed that Chestnut had said "I'll get you" to staff, while he was upset and being defiant. The DHO rationally concluded that in his judgment, "it's reasonable for any staff member in a correction setting to perceive a defiant and hostile inmate who makes statements like 'I'll get y'all' and 'I'm going to get y'all,' and '[F**k] y'all'. . . as an inmate communicating an intent to cause them bodily harm." (Dkt. No. 48-2 at 4.) Officer Long's written statement and description of Chestnut's conduct, especially when coupled with Chestnut's admission, were sufficient evidence to support the DHO's decision.

Moreover, Chestnut's staff representative stated that the video she reviewed reflected verbal exchanges between Chestnut and the escorting officers and also showed him going limp

---

[5] Moreover, it is worth noting that the DHO in fact considered Officer Long's written statement as part of the evidence; thus, the DHO had his version of events in the record.

with his legs out in front of him, making escorting him difficult. Thus, there also was evidence that he was being uncooperative at the time he was making those statements. All of this is more than "some evidence" that Chestnut committed the offense as found by the DHO. In short, Chestnut has failed to show a due process violation based on a purported lack of evidence.

## III. CONCLUSION

For the reasons stated, the court concludes that respondent is entitled to summary judgment as to Chestnut's due process claims in this case. Accordingly, the court will grant the respondent's motion for summary judgment (Dkt. No. 14) and dismiss this case with prejudice. An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to petitioner and to counsel of record for the respondent.

Entered: January 13, 2020.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge